## ALVAH HUNTRESS *versus* WILLIS PATTEN.

The cashier of a bank in which a draft has been left for collection, is a competent witness to prove that due notice of its dishonor has been given to the several parties.

Where the final payment of a draft was guaranteed, it is sufficient to maintain a suit against the guarantor to prove the insolvency of the parties to the draft before the commencement of the suit, and that the draft could not have been collected.

Neglect to proceed against the principal debtor, or to become a party to his assignment, (in case he has made one,) does not discharge the guarantor in whole or in part.

The guarantor of a contract tainted with usury, is so far a party to the same that he may set up usury as a defence to a suit upon his guaranty.

THIS was assumpsit against the defendant, as guarantor of the draft described in the following contract of guaranty : —

"Bangor, Jan. 12, 1837.

" I hereby guaranty to Alvah Huntress, or his order, the final payment of Newell Bean's acceptance for five hundred and seventy-nine dollars twenty cents, dated this day, drawn by Herman Fisher, and by him indorsed, payable in sixty days at the Suffolk bank in Boston.              WILLIS PATTEN."

The plaintiff then proved that said draft was duly protested, and notices to the several parties to the same were seasonably forwarded to W. H. Foster, the cashier of the bank in which it had been left for collection ; and that on the same day they were received, one was left for the defendant at his counting room, in Bangor, he being then absent.

It appeared in evidence, that Bean, at the maturity of the draft, had property in his possession ; and that on the third day of April, 1837, he assigned his property for the payment of his debts ; and that his creditors, who became parties to this assignment, received dividends of forty-eight per cent.

John Huckins testified that he wrote the guaranty, copying it from a similar one, which had been given by the defendant to the plaintiff to secure a similar draft, which had been accepted by Bean, and that the draft and guaranty adduced in evidence were received instead of the former draft and guaranty, which were given up.

The defendant offered to prove that interest at the rate of five per cent. per month, for the term of the former draft and the one in suit, was included in the latter.   This evidence was excluded.

The counsel for the defendant requested the Court to instruct the jury that no consideration for the guaranty was proved, and that neither identity of date nor the testimony of Huckins proved that the draft and the guaranty were executed upon the same consideration.   But WESTON C. J. who presided at the trial, instructed them that there was evidence to be left to them whether both were not given for the same consideration, and if so, a sufficient consideration for the guaranty was proved.

The defendant's counsel further requested the Court to instruct the jury, that defendant cannot be held to pay unless it be proved that the parties to the bill were and have been insolvent since its maturity, and that judgment has been obtained against them each, which after due diligence cannot be collected, or that such suits would have been unquestionably useless.

That notice being left at the counting room of Willis Patten & Co. if the jury were satisfied that the defendant was absent from Bangor, and out of the State at the time and for weeks after, was not sufficient and legal notice.

That if the jury were satisfied that Bean, the acceptor, had property which could have been attached, at the day the draft came back into the hands of the plaintiff, and that the debt might then have been secured, and that the plaintiff neglected until the third of April following to secure it by suit and attachment, and that Bean then failed and assigned his property, and that the defendant was absent as aforesaid, — it was the duty of the plaintiff to have secured his demand by suit and attachment before Bean's failure ; and if he neglected to do so, he could not call upon the defendant upon his guaranty.

These instructions the presiding Judge declined giving.

The jury returned a verdict for the plaintiff. If the testimony rejected ought to have been received or that which was objected to by the counsel for the defendant ought to have been rejected, or if the instructions requested and withheld should have been given, or if those which were given were erroneous, the verdict is to be set aside and a new trial granted ; otherwise judgment is to be rendered thereon.

*Cutting*, for the defendant. 1. The testimony to prove usury should have been received. St. 1821, c. 19. The guaranty refers to the draft. They are both part of one and the same transaction. *Bridge* v. *Hubbard*, 15 Mass. R. 103. It was given as security for a contract; and the party giving security for an usurious contract may show it in defence. *Richardson* v. *Field*, 6 Greenl. 36 ; *Warren* v. *Crabtree*, 1 Greenl. 169; *Tate* v. *Wellings*, 3 D. & E. 531. Any party to the contract, when coming in simultaneously or subsequently, may

take advantage of the usury. *Cuthbart* v. *Haley*, 8 D. & E. 390; *Young* v. *Wright*, 1 Camp. 139; *Mann* v. *Commission Co.* 15 Johns. 44. The statute prohibits the taking of usury directly or indirectly. The defendant was a party as much by virtue of his guaranty, as if on that day he had placed his name upon the draft.

2. No consideration for the guaranty was proved. It was given in exchange for a similar guaranty of another draft. No consideration is shown for the former guaranty — for if that was without consideration, so is this. *Aldridge* v. *Turner*, 1 Gill. & Johns. 427; 7 Har. & Johns. 457.

3. The neglect of the plaintiff has absolved the defendant from all liability. The plaintiff used no efforts to secure his debt of Bean, when with ordinary diligence it might have been collected. *Oxford Bank* v. *Haynes*, 8 Pick. 423.

By the express terms of the guaranty, the plaintiff cannot sustain his suit. The "final payment" of the debt only is guaranteed. The language of a surety is to be construed liberally for him. The words imply a condition precedent. 'Final' must have some meaning. He was the last person to be called upon by the contract of guaranty. It could never have been understood that resort should first be had to him. The other parties to the bill should have been called upon first. *Moakley* v. *Riggs*, 19 Johns. 69.

4. Foster was interested as a witness being liable if he was guilty of neglect in giving notice. *Springer* v. *Shirley*, 2 Fairf. 204; *Bailey* v. *Ogden*, 3 Johns. 399.

*Rogers*, for the plaintiff. There is no evidence that Patten was a party to the usurious contract; and none but a party can take advantage of the usury. *Reading* v. *Weston*, 7 Conn. R. 409. The guaranty was for a valuable consideration. Although there might have been usury between the parties to the draft, yet if the acceptor will not invoke the aid of the Statute, why should the defendant, who was no party to it be permitted to avail himself of that defence. The contract of guaranty was for a new consideration; and the guarantor is paid for his liability as upon a valid draft. The guar-

anty is a distinct and separate undertaking. The statute of usury applies only to a loan of money. Here was no loan to the defendant. It was merely a contract to pay, on the happening of a certain event, the debt of another. It should have been proved that the draft had no validity until it was negotiated to the plaintiff, to bring it within the statute. If none but a party can avail himself of the statute, and this be a separate and independent agreement, (not for the loan of money but for the security of the plaintiff, and for which the defendant has been paid,) then, as the defendant has not shown that this contract was part of the loan, and that the security was not to be available till after his signature, there is not that privity on the part of the defendant which authorizes him to invoke the aid of the statute.

2. The giving up of a former guaranty was a sufficient consideration for the present one. The legal presumption is that it was sufficient.

3. It was the duty of the guarantor to see to the payment of the draft. *Oxford Bank* v. *Haynes*, 8 Pick. 483. The defendant was to be liable upon some contingency, and if not liable now, it is difficult to perceive when he ever will be. The plaintiff was bound neither to become a party to the assignment, nor to commence a suit.

The opinion of the Court was by

SHEPLEY J. — The defendant was the guarantor of a bill or draft, which was proved to have been presented and regular notice to have been given to the other parties to it, if the cashier of the bank was a competent witness. The decisions appear to have been uniform, that one so situated is a competent witness, when it does not appear, that he would be liable to the plaintiff, if he failed to recover against the defendant. .And there was no sufficient proof of it in this case.

When the guaranty is made at the time of the original promise and becomes an essential ground of the contract with the principal, the consideration between the principals to the contract constitutes also a sufficient consideration for the guaranty,

*Leonard* v. *Vredenburgh*, 8 Johns. 29 ; *DeWolf* v. *Rabaud*, 4 Peters, 476. The surrender of the former draft was a sufficient consideration for the present. The contract of guaranty is less favorable for the party making it than that of an indorser ; for while it is necessary to notify an indorser, it is not necessary to notify a guarantor, in case of the insolvency of the acceptor. When notice has, as in this case, been regularly given to the guarantor, he may take measures to relieve himself ; and mere neglect to proceed against the principal does not discharge him. In the case of *Oxford Bank* v. *Haynes*, the guarantor was discharged by the neglect to notify, and not by the neglect only to proceed against the principal. This guaranty being only for the " final payment " of the draft, it is contended that the plaintiff cannot recover without proving, that he has exhausted his remedies against the other parties, or that they were insolvent, when it became payable. In the case of *Seaver* v. *Bradley*, 6 Greenl. 60, the guarantor was to to be " ultimately accountable " ; and it was contended, that he was not liable until after legal process against the principal had proved to be without effect. The Court say, " we consider the fair meaning to be, that if Heald should not comply with the terms of his engagement as to the payment for the goods purchased, then on due notice of the advances made on the faith of the guaranty, he would be accountable and pay for such advances not exceeding the limited amount." If the engagement in this case could be regarded as more favorable for the defendant, it does not in terms require any legal proceedings against the principal, and would be fully satisfied by proof, that the prior parties had become insolvent before the commencement of the suit. The defendant's liability would become certain and fixed by the proof, that the draft could not be collected of them. In the case of *Moakley* v. *Riggs*, 10 Johns. 69, the guaranty, in terms, required the proof of inability to be made out by proceedings in " due course of law."

The requested instructions were properly withheld, because they required proof of the inability of the principals to pay to extend to the time when the draft became payable ; and the

plaintiff was only obliged to prove its existence before the commencement of his suit. After notice to the defendant the risk of the solvency of the other parties was upon him and not upon the holder. Lord Eldon says, in *Wright* v. *Simpson,* 6 Ves. 734, " but the surety is a guarantor ; and it is his business to see whether the principal pays, and not that of the creditor."

The defendant is not the less a party to the contract because he is liable only collaterally and not in the first instance. The ground, upon which the consideration for his promise is held to be sufficient, is, that he was so connected with the contract between the other parties, that the consideration of their promise was that of his also. It is the very contract, which he engages to pay, that is alleged to be tainted with usury ; and he may prove it to be illegal, as well as defective in any other manner to prevent a recovery in part or in the whole.

The testimony offered to prove, that interest at the rate of more than six per cent. per annum was included in the draft should have been received, and there must therefore be a new trial.