Scott, J.
The judgment of the district court must be affirmed *26 unless the facts stated in the answer of the defendants below, constitute a defense to both the causes of action set out in the petition..
It becomes necessary, therefore, to examine the validity of the defense set up in the answer, with reference to each of these causes of action.
And first, is the note described in the first cause of action stated in the petition void by reason of its form, in *being made payable to the Licking County Bank, or order.
The 64th section of the act, under which the Licking County Bank was organized, is as follows: “All notes, bills, and other evidences of debt, except bills of exchange, discounted by any banking company, shall be made by the terms thereof, or by special indorsement, payable solely to said company, and no such evidence of debt shall be assignable, except for collection, or for the following purposes: First. To pay and redeem the circulating notes of such company. Second. To pay other liabilities of said company; and, after such liabilities shall have been discharged, Third. To divide among the shareholders on their stock.” Swan’s Stat. 100. Is the note in question, by its terms, payable solely to the Licking County Bank, within the meaning of this section of the statute?
The legislative intention in this enactment is quite apparent. It was, doubtless, designed to prevent bank officers, in view of the bankruptcy of the corporation, from disposing of its assets in fraud of the rights of creditors and stockholders. To secure this end it requires that the notes and bills discounted by banks shall be nonnogotiable in form, or be made so by special indorsement.
They must be made “ payable solely to said company.” In construing this clause, we are not at liberty to strike out the word “solely” as unmeaning, nor to lose sight of its manifest restrictive import.
The whole effect of the insertion of the word “ solely ” or “ only ” in the indorsement of negotiable paper, is to restrain its further negotiation. Thus, it is said by Judge Story, in his Commentaries, on Promissory Notes, “ Where the indorsement is ‘ Pay to A B only,’ there the word ‘only’ makes it clearly restrictive, and does not authorize a payment or indorsement to any other party.” This, then, being the clear and sole effect of such a restrictive indorsement, must be presumed tc be the purpose intended by the legislature in requiring such special indorsement ^whenever “the terms of the note or bill would not, of themselves, restrict its *27 negotiability. The latter part of the same section permits the-assignment • of discounted notes and bills, other than bills of exchange, only for the use of the banking company itself, in one of' four ways: Eor purposes of collection; for the redemption of its-circulation; for payment of its other liabilities; and for distribution among its stockholders. For each of these purposes such evidences of debt might readily bo assigned without being negotiable in form.
No other construction, than the one which we think the plain, meaning of the terms employed in the statute requires, would put. it out of the power of banking corporations to defeat the intention of the legislature, by making assignments of discounted paper, in fraud of billholders, creditors, and stockholders, and at the same-time secure bona fide purchasers of such paper, against fraud and imposition. The 51st section of the act gives to the banks a general power to buy and sell notes and bills ; the restriction of section 64 relates only to the form of bills and notes discounted, and does-not expressly declare them void, on account of the prohibited form. Whether a discounted negotiable note might not therefore be valid, in the hands of a bona fide purchaser, without notice of the manner-in which it had been acquired by the bank, is, to say the least, by no moans certain. The authorities would, perhaps, justify us in saying that it would be valid in the hands of such bona fide purchaser. Angel & Ames on Corp., sec. 268; 4 Hill, 445, 459; 11 Paige, 635. But were it otherwise, the non-negotiable form in which section 64 requires discounted paper to be clothed, would give full notice to-the purchaser, and thus secure him against imposition.
And, if our construction of the G4th section be correct, We think it apparent.that its language is mandatory, and not directory merely. The act authorizes banks to discount paper only in one mode, andr of course, they can have no power to discount otherwise. They are as effectually ^limited by the statute, in regard to the mode of exercising the power conferred, as they are in respect to-the power itself. Angel & Ames on Corp., sec. 111; 2 Cranch, 165; 13 Pet. 587. Besides, to construe this section as directory only, would render it powerless to prevent the mischief which it was intended to remedy.
Construing, then, the 51st section of the act, which gives to each banking company, to be organized under it, the power of discounting notes, “ except such as it shall be by this act prohibited from *28 .... discounting,” in connection with the limitations of the fi4th section, a majority of the court are satisfied that the Licking -County Bank had no power, under its charter, to discount the note in question, because a negotiable form was given to it, in contravention 'as well of the spirit and policy, as of the terms of the statute. And if, for this reason, the note was void in the hands of the Licking County Bank, no action, could be maintained upon it by the State Bank of Ohio, which, upon' the commission of the act •of bankruptcy, succeeded, by operation of the statute, merely to the rights of the bankrupt corporation..
It remains to inquire whether the answer discloses a defense, •equally available, in regard to the second clause of action, in which the plaintiff socks to recover for money loaned. ' The 51st and Gist sections of' the act before referred to, give to the banks organized under it, power to loan money, and to take interest in advance on .any loan made, at the rate of six per cent, per annum. The answer does not deny that thirteen hundred dollars was in fact loaned to the defendants by the Licking County Bank, less the interest which the law allowed to bo taken in advance. The power of the bank to make such a contract of loan, without taking any written evidence ■of indebtedness was unquestionable. The answer shows the transaction to have been, not the discounting of a valid business note of •a third party, but in fact a loan of money, evidenced by a note drawn in a fohn which the law prohibited, *and wbiqh was void for want of power in the bank to receive it in that .form. The substantial contract of the parties was untainted with usury, or any other illegality; the sole vice was in the negotiable form of the note. As commercial paper, this note was utterly void; the bank could maintain no action upon it; and the statute prohibited its assignment, even if valid, except for the use of the bank. Now, can the defendant be permitted to claim that this void note, in respect to which they stand pari delicto with the bank, shall ■operate as a discharge and satisfaction of a bona fide indebtedness for money loaned ? The case of Miami Exporting Company v. Clark, 13 Ohio, 1, is relied on, as authority, in favor of such a claim. The ■court was not unanimious in the decision of that case ; but without imputiging its authority, we conceive it differed from the case now before us. The vice, in that case, was usury, which tainted not only the paper sued upon, but the contract of loan itself. Independent of the note, the contract was one which the Miami Exporting Company *29 had no power to make. But here, as wo have said, every thing is-legal, except the form, of the paper. In that case, a recovery could not have been had if no note had been taken, but here it is clearly otherwise. Indeed, it is evident, that the court in that case would not have permitted void paper to extinguish or discharge a valid, debt; for they say: “As to the point, that if the original loan, was tainted with usury, the plaintiff might recover upon the common counts, although the subsequent paper was so tainted, we believe no difference of opinion exists."
We think the whole object of the requirement of the statute, as-to the form of discounted paper, is accomplished, and indeed can only be attained by holding that securities, taken in a prohibited form, are simply void, and do not affect the independent rights or-liabilities of the parties. The mischief intended to be remedied is thus guarded against, while the bona fide assets of the bank are preserved for the benefit of billholders *and creditors. A party should not be permitted to plead his own violation of the law as a discharge from legal obligation to pay an honest debt. The authorities are numerous, both in this country and in England, in support of the principle that money loaned on a written security which the statute makes void, may be recovered in an action on the-common counts. Indeed, I am aware of no authority to the contrary, where the vice of the paper is merely in its form.
The judgment of the district court is affirmed.
Swan, C. J., and Brinkerhoee and Peck, JJ., concurred.